The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning. We're set to hear a number of cases this morning on our Phoenix docket here at the Court of Appeals. We have six cases. One of them is submitted, but if the parties are ready to versus Kilolo Kijakazi. Somebody can help me with the name on that. Then I think we're ready to proceed. Counsel. Thank you, Your Honor. Audrey Miller representing appellant Stacey Schneider and I will let my colleague Mr. Talbert pronounce the commissioner's name. I'd like to reserve two if it pleases the court. The issue on appeal is that the ALJ at the hearing level failed to fulfill her duty to fully and fairly develop the record and assist the unrepresented Ms. Schneider in obtaining records, which she could have fulfilled by taking the very simple action of looking at the recent medical treatment form that Ms. Schneider had dutifully filled out and turned in at agency instructions and the ALJ could then have gathered the records referenced therein. And yes, the ALJ discussed medical treatment at the hearing. And yes, the ALJ left the record open. However, the ALJ did not fulfill her duty because Ms. Schneider in good faith did follow agency instructions in communicating her recent treatment to the agency through the recent medical treatment form and reasonably relied on the ALJ's representations at hearing that the ALJ would obtain additional records. What records do you contend are missing that were not in front of the ALJ? These are records primarily records from Dr. Chantel Chen that would support Dr. Chen's opinion but also records from Dr. Cabin and Dr. McCullum that were referenced on the recent medical treatment form that would support Ms. Schneider's physical conditions. Do we have those records? Do we know what they are? We do not, your honor. However, that is not terribly important because at this level, this court, the appeals council, the district court are not the fact finders. That's for the ALJ to decide what relevance those records would have. And in fact, the very existence... I'm kind of puzzled. Were those records submitted to the appeals council? And if not, why not? They were not, your honor. And in terms of why not, in hindsight, it probably would have been a good idea. Because it looks like there's been no proffer of what's in those records. And it seems like that bear on the questions before us. And so do you know what missing information or information do these missing records have? It would have... I, in fact, do not know what's in those records. However, there is no requirement that a proffer in a case like this, that a proffer be submitted. There is case law that says it would be a good idea. And I'm not disputing that. However, there is no requirement in law. We know it's going to make any difference whatsoever, or we aren't launching everybody off in a wild goose chase for a couple of years. I mean, it may not be a requirement, but it's not very persuasive for us to say, you know, maybe someday, somebody is going to find something out there. Do we have any reason to think that this is not a wild goose chase? It's not a wild goose chase, your honor, because while, in fact, it is possible that the ALJ might find that Ms. Schneider is not disabled, but it's not a wild goose chase because there's still a legal error here because the frequency and length of treatment is a factor that the ALJ may consider in determining the weight given to an opinion. And because frequency and length of treatment is a factor that the ALJ can consider, just the very existence of these records, which we know exist, could make a difference to the outcome of the case. Well, it seems like, from what I understand of your case, that it's these gastrointestinal issues that were being referred to that might have some bearing on whether or not Ms. Schneider's claims are successful here. But it's my understanding that the claimant bears the responsibility or burden of proving disability and identifying any existing records with specificity. And so if we look at what's presented here in Ms. Schneider's recent medical treatment form, it lists the dates as to when she saw some of these doctors as unknown. And she lists advice from the doctors as just hang in there. And she lists unknown for the date her record was last brought up to date. I'm just trying to understand how this sort of vague information is sufficient to trigger the ALJ's duty to develop the record, because that seems to be the main thrust of your argument here. With respect to that form, Your Honor, I have two parts to that answer. First, with respect to the last time we brought your case up to date was that was provided to Ms. Schneider. She would have no way of knowing that information, Your Honor, because that's information that the agency should provide to her. With respect to, you know, so therefore, she could not know what to fill in in the dates when she had seen these doctors. Let me make sure you're saying that it's up to the agency to figure out the date. She's the one that was treated. She's the one that should have the best knowledge, at least of a range or an filled in unknown. The last one is filled in can't remember. It doesn't give the agency much to work with. I just I'm just wondering, is that, you know, the mere mention of the doctor like Dr. McCollum, which I understand that saying, but is that enough to trigger an ALJ's duty without more, especially when these forms were filled out the way they were? I believe so, Your Honor. But in itself should also serve to trigger the ALJ that there is additional information out there. The fact that there's an opinion with no records behind it, in addition to this recent medical treatment form listing Dr. Chen tells the ALJ there's more records out there, recent records, because Dr. Chen's opinion says that says how long Ms. Schneider has been treating with her. What do you contend should have happened at the ALJ hearing? Should the ALJ have pulled out this form and then questions Ms. Schneider about the form? I don't think that the hearing should have gone much different than it did, Your Honor. I think that after the hearing, after the ALJ told Ms. Schneider that she would look for all the records that were out there, that the ALJ should have just looked at this form said, oh, there's records from Dr. Cabin, Dr. McCullum, Dr. Chen. I have addresses for them and subpoenaed those records in addition to the watch. What was the error? Because the ALJ here, you know, had a pretty lengthy back and forth with Ms. Schneider, didn't, you know, allowed her to supplement the record, did subpoena doctors. So where's the error that requires a remand? The error is not looking at the form that the agency gave to Ms. Schneider said, turn in this form and allowed Ms. Schneider to communicate as best she could where records existed. And just so I understand your, is your argument that regardless of what the ALJ otherwise did, the failure to go through this form or follow up on this form was per se error? In this case, in this narrow case, yes. And what's your best authority for that? Um, there's a case outside of the outside of this circuit where this was found in Torres Pagan versus Barry Hill in the first circuit. And so I guess before your time is up, and even if we accept your argument here with respect to that form and that it was per se, or that was significant, don't we need to consider this argument in the context of the whole hearing and the testimony that she, that your client presented? It seemed to be primarily focused almost exclusively on her struggles with mental health. Um, so I'm just trying to figure out in a case like this, where she's primarily almost exclusively arguing that it's her mental health. Does that duty, I'm just not quite sure how that duty, um, she's focused on ALJ. I'm sorry. She's focused a great deal on her mental health because that her breakdown was a very significant part of her life. That's true. But she does mention her physical and physical ailments. And she does mention that they were a background portion of her life that she had kind of adapted to, but then everything kind of got overwhelming. And it is the ALJ's duty to look at everything. All right. Well, thank you. I'll give you a minute or two for a rebuttal because we used all your time. I appreciate that. Your honor. Thank you. Counselor, Mr. Talbert. Yes. Thank you, your honor. May it please the court. Daniel Talbert on behalf of the commissioner of social security, Kilolo Kijikazi. The ALJ's decision is free of legal error and substantial evidence supports the ALJ's findings. Therefore, this court should affirm. Um, as the panel has noted, the primary issue here is about whether the ALJ satisfied any duty that she might've had to assist the unrepresented claimant in developing the record. And here the ALJ went to considerable lengths to ensure that the claimant's interests were protected and that the record was sufficient to enable the ALJ to reach a decision. Now the claimant has presented this as a case of an ALJ's failure to develop the record, but that's not the proper framing of this particular case. This is actually a case that hinges on the claimant's burden to prove disability. And essentially the claimants and her attorneys failing to prove disability to present evidence that would support her claims of disability. What is the function of the recent medical treatment form in these types of proceedings? How is it typically used? Your honor, my understanding of that form is that it is a form that can give the agency information about whether there are additional records that the agency could look at or to look into. And I would note that in this case, when we look at that statement of recent medical treatment, I think it's on page 281. I'm sorry. Yes, right. There is a little bit later in the record, there is evidence that comes from some of those sources, those same sources. So we actually see that the agency did end up obtaining evidence from those sources, from Dr. Chen. In your experience as someone who practices in this area, and perhaps your co-counsel can address the point too, how is the form typically used in the course of the proceedings, if at all? Do ALJs have it in front of them as they go through something with the claimant? Is it something they may consider on their own, but not necessarily engage in a discussion with the claimant? Well, candidly, your honor, I don't have a lot of information about how this form is used because it usually isn't of that much significance, quite frankly, in these cases. And one of the reasons why, and you see it in here as well, is because at the hearing, the claimant appears before the ALJ and gets the opportunity, and the ALJ has the opportunity to question the claimant more specifically about, okay, you got the records, you had the evidence there, you have it available to you. If you didn't look at it, let me summarize it for you and tell you what's in there. And then you can tell me if there's anything that's missing. And the ALJ engaged in a much more detailed colloquy with the claimant than that one-page form would have permitted, than the communication that form permitted. And as I think, I think it may have been Judge Merguia that noted that the, or it may have been, I'm sorry, I could be wrong about which member of the panel, so I'm sorry if I'm misattributing that, but had stated that the form was not specific at all. It has unknown dates, it has unknown information, it just doesn't put the agency on very much notice of what's going on. So that's why at the hearing, the ALJ had the opportunity to talk face-to-face with this claimant and to say, all right, Ms. Schneider, here's what I have. Let me know if there's anything else. Let's talk through this. Let's talk about what might be missing. I can assist you in obtaining records. And what I will even do is I will leave the record open after this hearing. I'm not closing the record. I'm going to leave it open for 20 days more. And I'm going to contact some of the sources that you've just told me about that might have other information. And I want you to go back and figure out if there's anything else that's missing. Is that always, I mean, so every time an ALJ leaves the record open, is that duty of the ALJ fulfilled if that's all it's required? You're not asserting that, are you? No, Your Honor. I think under certain circumstances, it would not be, that would not be sufficient. And what I could think of is if we had a case with an unrepresented claimant who has mental impairments, and if that claimant shows up at the hearing and the ALJ doesn't ask her anything about whether the record is sufficient, and the ALJ just says at the end, all right, Ms. Schneider, I'm just going to leave the record open. If you want to send anything else, you can send it. If not, don't send it. We'll leave it open for 20 days. We'll see what happens. That could be problematic if the record is lacking in any or has any inadequacies. But in this case, where the ALJ is actually doing much more than just leaving the record open and not telling the claimant what the significance of that is, I mean, the ALJ is giving the claimant considerable explanation about what's going on here, about what the claimant can do, about what the ALJ can do to get any other records. So in this case, our position is that the ALJ easily satisfied any duty to assist the claimant in developing the record. I'm sorry. Let me just ask you about that, because the ALJ never mentioned Ms. Schneider's recent medical treatment form during the hearing or in the written decision. And so I did notice that. And given that there are no documents in the record from one of the doctors on the form, I guess that was Dr. McCollum, should we be concerned that the ALJ overlooked the form? I would say not, Your Honor. And again, the point that I would mainly go back to is that, again, at the hearing, the ALJ is telling the claimant exactly what's in the record. The ALJ didn't mention Dr. McCollum when the ALJ said, here's what I have. I don't think the ALJ mentioned Dr. Chen when the ALJ said, here's the evidence I have. She told the claimant, here's the evidence that we have in the record. What else do we need to get? So essentially, the ALJ's much more detailed questioning and discussion with the claimant at the hearing superseded what was in that very vague, very insufficiently articulated form about recent medical treatment. The ALJ is giving the claimant the chance to provide more details, to provide more information, and to tell the ALJ, what do I need to do? There isn't any, I'm sorry. Let me ask, how about the two-year gap in between Dr. Hirsch's opinion and Dr. Chen's opinion? Is that not an issue here? It's not, Your Honor. And the reason that it's not is because there isn't evidence subsequent to Dr. Hirsch's review that demonstrates some sort of worsening condition, new impairments, or any reason that Dr. Hirsch's earlier assessment was not valid or not legitimate. And I will point out for the court right now that there, even though there aren't specifically records from Dr. Chen or perhaps Dr. McCollum in this record, there is evidence about the claimant's gastrointestinal and abdominal symptoms, which formed the basis for Dr. Chen's opinion, I will note. In December of 2016, the claimant reported to her treating sources at COPE that she was having gastrointestinal pain, which was similar to when she had gallbladder surgery. That's on page 1042 of the Certified Administrative Record. And in March of 2017, this is on page 1044, she noted, I've been having some abdominal pain. I went to the emergency room a couple of times, but the labs have been normal. And they haven't found out what this is. They don't have a basis for it. So essentially, what this shows is that the claimant is basically saying there is no objective basis for allegations that she's making, for assertions that she has here. So that remains consistent with what Dr. Hirsch said, even two years earlier, which was that the labs were within normal limits, there were no significant abnormalities, and there was no evidence to support physical, functional limitations. If the claimant had, at the records, the Appeals Council have then sent it back to the ALJ to look at that again. The Appeals Council certainly could have, or the Appeals Council could have made its own decision. And this is something that's very significant. My friend on the other side noted, well, it doesn't matter that nothing went before the Appeals Council or before the District Court, because they weren't fact finders. But that actually misunderstands and misstates really what the law is with respect to, especially the Appeals Council. We know that under the regulations and under this court's case law, such as Bruce versus Commissioner of Social Security, that a claimant can give evidence to the Appeals Council, and that evidence will become part of the certified administrative record. So even if the claimant gave the evidence to the Appeals Council, the Appeals Council, as your Honor said, could send it back to the ALJ or could make its decision. But the Appeals Council could also say, no, we're fine with what the ALJ did. Go to District Court if you have a problem with it. And then in District Court, the District Judge could have actually seen what that other evidence had and could have determined under Bruce and other cases, whether that provided a basis for remand. But the claimant failed in that responsibility. The claimant's attorney didn't submit that evidence and has conceded now that essentially she doesn't know what, if anything, that evidence would show. So our position remains that the claimant has failed to meet her burden of proving disability and certainly of proving that there's any prejudice that the ALJ failed in any duty. Let's see if anybody has any other questions. Thank you. All right, thank you. Thank you very much. Thank you, Your Honors. Ms. Miller, I'll give you a couple minutes for rebuttal. Thank you, Your Honor. I wanted to address real quick the evidence from the sources that my colleague has mentioned that came in after the recent medical treatment form. Those most definitely came from Ms. Schneider herself, not from the agency. They appear in the E subsection, not the F subsection. They appear as a, the E subsection is where miscellaneous records go. The F subsection is where medical records go. There's a HalEx on that, which is, well, there is a HalEx on it, which I'm not finding immediately. I'm so sorry. But anyway, they definitely came from Ms. Schneider because they're all in one big is used. Our experience has been the agency insists on it being returned and then never looks at it again. That is of course anecdotal, but that is what we have experienced. In terms of leaving the record open, Ms. Schneider believed at that point that she had communicated the information that was required to the agency through the recent medical treatment form about where she had been. That is what renders, in this case, the fact that the record was left open insufficient because she had already communicated that information and had the reasonable belief that that form was sufficient. And in terms of physical impairments, it wasn't just gastrointestinal issues, although that was a large part. There was also a factor of fibromyalgia as well. All right. Thank you very much. Appreciate both of your presentations here today on this case. And thank you very much. The case of Stacey Schneider versus Kilo Kijakazi is now submitted.
judges: CLIFTON, MURGUIA, BRESS